*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>VANESSA LYNN FRANKLIN,<br><br>                Debtor. | Case No. 24-22967<br>Docket Control No. VLF-2 |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

**MEMORANDUM OPINION**
**AND**
**DECISION DENYING AMENDED MOTION TO VACATE ORDER GRANTING RELIEF FROM STAY**
**AND**
**DISMISSING WITHOUT PREJUDICE MOTION FOR SANCTIONS**

    Debtor Vanessa Franklin, the Debtor now prosecuting this Bankruptcy Case in *pro se*, ("Debtor"), the court having entered an order on March 10, 2025, authorizing her counsel of record to withdraw (Order; Dckt. 137), has filed an Amended Motion to Vacate Order Granting Relief From the Automatic Stay, which is combined in one pleading with a Motion for Sanctions, Damages, and Contempt for Violations of the Automatic Stay and Fraud on the Court. Dckt. 151. At all times relevant to the Order granting retroactive relief from the Automatic Stay, the Debtor was represented by experienced bankruptcy counsel.

    As the court addressed in the proceedings, the joinder of the two different claims for relief is not permitted by the Local Bankruptcy Rule 9014-1(d)(5) unless ordered by the court. While Federal Rule of Civil Procedure 18, which is incorporated into Federal Rule of Bankruptcy

1 Procedure 7018, allows for joinder of multiple claims for relief in one complaint in an adversary
2 proceeding, Federal Rule of Bankruptcy Procedure 9014(c) excludes the use of Federal Rule of
3 Bankruptcy Procedure 7018 from applying in contested matter proceedings, such as motions.

4     The Motion for Sanctions relates to events in large part that were identified as occurring after
5 the request for retroactive relief was granted, as well as during the retroactive period. As such, a
6 significant portion of the sanctions sought would be dependent on the Debtor prevailing on the
7 Amended Motion to Vacate the Order granting retroactive relief. As will be seen in this Decision
8 and a review of the Civil Minutes and Pleadings in connection with the Amended Motion to Vacate,
9 it presented complicated grounds, documents, and arguments.

10     The court having determined that the Amended Motion to Vacate is denied without
11 prejudice, the court concludes that the joined request for Sanctions is dismissed without prejudice,
12 with the Debtor being able to bring a request for such relief through a subsequent motion that would
13 relate to a period when the automatic stay had not been terminated.[1]

14     The Debtor has now filed a Motion for Sanctions. At the July 10, 2025 hearing on the
15 Amended Motion to Vacate, the court took the matter under submission, stating that it was likely
16 that the court would follow the tentative ruling and deny the Amended Motion to Vacate. As shown
17 by the date on this Decision, the court was delayed in issuing the Decision and Order. The Debtor
18 elected to get the Motion for Sanctions on file, anticipating the Ruling.

---

[1] The court's Amended Order granting the retroactive relief, Dckt. 245, grants such relief retroactively to and including September 5, 2024. This is consistent with the court's ruling stated in the Civil Minutes. Dckt. 99, pp 3-4. The Ruling states that it relates to the conduct of Landlord in commencing the unlawful detainer action in State Court on September 13, 2024. *Id*.; p. 3. The court retroactively annulled the stay as of and including September 5, 2025, finding,

> Here, the court finds that annulment of the stay is warranted. The **evidence shows Movant was not aware of the bankruptcy petition when filing the unlawful detainer action and taking other actions against Debtor**. Moreover, Debtor failed to pay rent in September, which is conduct that prejudices Movant. Therefore, the stay is annulled through and up to September 5, 2024, **when Movant began taking actions against Debtor.**

*Id*.; pp 3-4 (emphasis added).

# REVIEW OF AMENDED MOTION TO VACATE ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

The Debtor moves the court for an order vacating the Original Order for Relief and Amended Order for Relief, at Dockets 100 and 245, pursuant to Federal Rule of Civil Procedure 60(d)(3), which states:

> (d) Other Powers to Grant Relief. This rule does not limit a court's power to:
> . . .
> (3) set aside a judgment for fraud on the court.

While Federal Rule of Civil Procedure 60(b) states a general power of the court, Federal Rule of Civil Procedure 60(b)(3) is the specific provision which relates to fraud or misconduct by a party, stating:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . .

The court has worked through the Motion and has summarized the following grounds stated in the Amended Motion to Vacate, and summarizes those grounds as follows:

1. Prime Legends, LLC's ("Prime," "Landlord," the court using "Prime" when that term has been used by a party in its pleadings that the court is referencing) deliberate misrepresentations and calculated concealment of facts constitute fraud on the court.

2. On July 8, 2024, the Debtor filed for Chapter 13 bankruptcy. That same day, the Debtor emailed Trina Gross, Prime's Senior Community Director and Authorized management Person, with the official Notice of Bankruptcy Case Filing.

3. Ms. Gross acknowledged the notice and promptly cc'd Daniela Cuen, Assistant Community Director and Authorized Agent, confirming that both had direct knowledge of the bankruptcy.

4. Despite this clear notice, Prime violated the automatic stay by demanding rent just three days later on July 11, 2024.

5. Prime used various aliases to manipulate and mislead. Repeated fraudulent misrepresentation of a corporate identity constituted fraud on the court and warrant *vacatur* of a judgment obtained through deceit.

6. The absence of opposition in the original Motion for Relief was not due to negligence, but rather the result of the Debtor's mental health crisis that

1　　　　　　　directly impacted her ability to communicate with her attorney for the three
2　　　　　　　weeks leading up to the hearing.

3 **Landlord's Opposition**

4　　　　Landlord filed an Opposition on April 10, 2025. Docket 161. Landlord states, as relevant
5 to the Amended Motion to Vacate:

6　　　1.　　Although the Landlord was included in the Debtor's Schedule E/F, the
　　　　　　　Debtor omitted the Landlord from her Verification of Master Address List
7　　　　　　 and the amended list, and the Landlord did not receive notice of the
　　　　　　　commencement of this case. Id.; at 7:17-8:1.
8
　　　　2.　　Debtor paid rent for July on July 11, 2024, three days after commencing this
9　　　　　　 case. *Id.* at 8:3-6.

10　　　3.　　Thereafter, the Debtor was current on rent until she failed to pay rent for
　　　　　　　September 2024. The Debtor never paid any further rent. All of the unpaid
11　　　　　　rent accrued post-petition. *Id.* at 8:12-15.

12 With respect to the rent payments, the Debtor was occupying the premises post-petition as she was

13 attempting to prosecute a Chapter 13 Plan in *pro se*. (Debtor commenced this case in *pro se*, and

14 after it was converted to one under Chapter 7 she obtained counsel on October 8, 2024, and said

15 counsel then withdrew from representation, pursuant to order of the court, on March 10, 2025.)

16　　　4.　　The Landlord commenced an unlawful detainer action against the Debtor by
　　　　　　　filing a complaint on September 13, 2024. As mentioned above, "Prime
17　　　　　　Group" is the Landlord's registered fictitious business name. The Landlord
　　　　　　　was identified as "Prime Group, LLC" in the unlawful detainer pleadings by
18　　　　　　mistake. *Id.* at 8:19-22.

19　　　5.　　The Debtor filed her answer on October 3, 2024, ultimately alerting the
　　　　　　　Landlord of the bankruptcy case. The Landlord promptly ceased work on the
20　　　　　　unlawful detainer action. *Id.* at 8:24-9:1. That action was resolved in January
　　　　　　　of 2025 when Debtor voluntarily moved out.
21
　　　　6.　　Debtor is not entitled to relief under Rule 60(b)(3) because (1) she cannot
22　　　　　　prove that the Landlord's alleged actions prevented her from opposing the
　　　　　　　Motion for Relief from Stay, and (2) she cannot prove fraud, by clear and
23　　　　　　convincing evidence, among other necessary elements. *Id.* at 14:11-15.

24　　　7.　　The Debtor alleges that the Landlord made two intentional
　　　　　　　misrepresentations: (a) that the Landlord did not know about the bankruptcy
25　　　　　　case until October 2024; and (b) that the Landlord somehow defrauded the
　　　　　　　Court by mistakenly identifying itself as "Prime Group, LLC" in its
26　　　　　　pleadings. On the contrary, the Landlord's misstatements were innocent
　　　　　　　mistakes that caused no prejudice. *Id.* at 19:3-8.
27
　　　　8.　　Even if the Debtor's emails came to light at the hearing on the Motion for
28　　　　　　Relief from Stay, the Court still would have granted retroactive relief from

4

the automatic stay. Knowledge of a bankruptcy case is a major factor, but it is not dispositive. *See National Environmental Waste Corp. v. City of Riverside*, 129 F.3d 1052 (9th Cir. 1997) *Id.* at 20:5-8.

9. In the event the Court is not inclined to deny the Motion on the basis of undisputed facts (which support denial of the Motion), the Court should set an evidentiary hearing. *Id.* at 27:27-28:1.

**Debtor's Reply**

Debtor filed a Reply on April 18, 2025, reiterating her initial points and disputing Landlord's Opposition. Docket 174.

**Supplemental Pleadings Filed**

After bifurcating the proceedings (Order and Civil Minutes; Dckts. 203, 202) and only considering the Amended Motion to Vacate at this time, the court set a briefing schedule for the Parties to file supplemental briefs addressing issues relating to the Amended Motion to Vacate. Order, Docket 213. Landlord filed its Supplemental Brief on May 30, 2025. Docket 216. Landlord supplemental pleading, as summarized by the court, states:

1. Landlord would have been entitled to retroactive relief even if the emails were disclosed. *Id.* at 2:3-4.

2. The balance of equities favors the Landlord: the Debtor entirely ceased paying post-petition rent and would eventually have faced an unlawful detainer action, whereas denying retroactive relief would have required the Landlord to restart its unlawful detainer action, resulting in the same situation but at greatly increased cost. *Id.* at 2:5-9.

3. There is no dispute that Ms. Cuen actually forgot the emails and lacked actual knowledge of the bankruptcy case when she signed her declaration stating that the Landlord only recently learned of the case. Finally, even if Ms. Cuen's misstatement was perjury (which Landlord asserts it was not), it does not rise to the level of fraud required by Rule 60(b)(3) and (d)(3) of the Federal Rules of Civil Procedure (incorporated in Rule 9024 of the Federal Rules of Bankruptcy Procedure). *Id.* at 2:9-13.

    a. Trina Gross is a senior community director employed by Prime Administration, LLC and she supervises Ms. Cuen. Ms. Gross likewise reports to a regional manager, who reports to a vice president, and so on. *Id.* at 2:25-27.

    b. Among other duties, Ms. Cuen and Ms. Gross each review and act on about thirty emails or more from tenants every day, which is equal to about 660 emails or more per month. *Id.* at 3:1-3.

    c. In the first half of 2024, the Debtor's rent was frequently late. Every month, the Debtor would engage in extensive email correspondence with Ms. Cuen or Ms. Gross, sending them multiple excuses, with

|   |   |   |
|---|---|---|
| | | new excuses every month. *Id.* at 3:13-15. |
| | d. | On July 8, 2024, the Debtor sent an email to Ms. Gross stating that she had an unspecified emergency situation, had lost her car, and had filed for bankruptcy. The email included a small image of a screenshot of the Notice of Bankruptcy Case Filing. *Id.* at 3:19-21. |
| | e. | Later, neither Ms. Cuen nor Ms. Gross recalled the Debtor's aforesaid emails. *Id.* at 4:27-28. |
| 4. | | Although the Landlord was included in the Debtor's Schedule E/F, the Debtor omitted the Landlord from her Verification of Master Address List and her amended list. The Landlord never received notice of the commencement of this case from the Court. *Id.* at 4:4-8. |
| 5. | | Debtor seeks to vacate the order for retroactive relief from stay pursuant to Rule 60(b)(3) and (d)(3), which requires proof, by clear and convincing evidence, of fraud that prevented the Debtor from opposing the Motion for Relief from Stay. Debtor has not met her burden. *Id.* at 5:20-23. |
| 6. | | Retroactive relief from the automatic stay may be warranted even where the movant knew or should have known of the bankruptcy case. "[I]n the Ninth Circuit, a postpetition foreclosure sale taken in violation of the automatic stay—even a sale executed with knowledge of the bankruptcy petition—may be validated by annulment of the stay." *Fularon*, 2011 Bankr. LEXIS 4335, at *11, *citing Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir. 1985); *see also In re Kissinger*, 72 F.3d 107, 108 (9th Cir. 1995) (affirming retroactive relief for trial that proceeded against *pro se* debtor despite knowledge of bankruptcy). Suppl. Brief 7:3-9. |
| 7. | | The circumstances here are similar to a default judgment. A default judgment may be vacated only upon proof of insufficient service or other procedural or jurisdictional defects. The truth of the allegations in the complaint is irrelevant, even if the allegations are false. Likewise here, the Debtor is entitled to relief only if she can prove, by clear and convincing evidence, fraud that prevented her from opposing the Motion for Relief from Stay. *Lafarge*, 791 F.2d at 1338. There is no way that Ms. Cuen's misstatement prevented the Debtor from opposing the motion. Indeed, it is undisputed that the Debtor knew the truth all along. Suppl. Brief. 8:17-23. |

Landlord filed the Declarations of Trina Gross (Docket 221) and Daniela Cuen (Docket 219) in support to authenticate the facts alleged in the Supplemental Brief.

**Debtor's Reply Brief**

Debtor filed her Reply Brief and supporting pleadings on June 10, 2025. Docket 225.

Debtor states:

1. On July 8, 2024, the Debtor emailed to Ms. Gross, Prime's Senior Community Director, attaching the official Notice of Bankruptcy Case Filing. The notice explicitly prohibited collection efforts under the automatic stay. Ms. Gross acknowledged the email within minutes but dismissed its legal effect, warning that if rent wasn't paid by July 11th, the file would be sent to

1         attorneys to begin eviction proceedings. *Id.* at 2.

2. The more plausible explanation is that Ms. Gross and Ms. Cuen either ignored the emails or knowingly mislead the Court. Their declarations contradict earlier claims that they only became aware of the bankruptcy in mid-October. *Id.* at 2.

3. Under *In re Price*, 871 F.2nd 97, 99 (9th Cir. 1989), actual notice to a property manager constitutes actual notice to the creditor. Ms. Gross's excuse that she receives over 30 emails per day does not excuse ignoring a legal notice with clear bankruptcy implications. *Id.* at 2.

4. Ms. Gross' Declaration appears coordinated and fabricated. *Id.* at 4.

5. Debtor had a psychiatric breakdown when learning Prime had filed for relief from stay, and this prevented Debtor from making a defense at the original hearing. *Id.* at 5.

6. This is not a case where the Debtor simply failed to respond. Rather, the opposing party submitted materially false declarations and engaged in conduct that directly triggered a severe psychiatric relapse. *Id.* at 6.

7. Prime did not follow California tenant law and engaged in retaliatory behavior such as sending incessant 3-day notices to pay or quit. *Id.* at 7.

Debtor submits her own Declaration to authenticate the facts alleged in the Reply Brief. Docket 226.

**Landlord's Response**

Landlord filed a Response to Debtor's Reply Brief on June 20, 2025. Docket 229. Landlord reiterates its points mentioned in their Supplemental Brief.

## REVIEW OF APPLICABLE LAW

**Federal Rule of Civil Procedure 60,**
**Federal Rule of Bankruptcy Procedure 9024**

Federal Rule of Civil Procedure Rule 60(b), as made applicable by Federal Rule of Bankruptcy Procedure 9024, governs the reconsideration of a judgment or order. Grounds for relief from a final judgment, order, or other proceeding are limited to:

(1)     mistake, inadvertence, surprise, or excusable neglect;

(2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

|   |   |   |
|---|---|---|
| (4) | the judgment is void; |
| (5) | the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or |
| (6) | any other reason that justifies relief. |

FED. R. CIV. P. 60(b). A Rule 60(b) motion may not be used as a substitute for a timely appeal. *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993). The court uses equitable principles when applying Rule 60(b). *See* 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2857 (3d ed. 1998).

A condition of granting relief under Rule 60(b) is that the requesting party show that there is a meritorious claim or defense. This does not require a showing that the moving party will or is likely to prevail in the underlying action. Rather, the party seeking the relief must allege enough facts that, if taken as true, allow the court to determine if it appears that such defense or claim could be meritorious. 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 60.24[1]–[2] (3d ed. 2010); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

Additionally, when reviewing a motion under Rule 60(b), courts consider three factors: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk*, 739 F.2d at 463 (citations omitted).

In the context of Federal Rule of Civil Procedure 60(b)(3), Moore's Federal Treatise informs:

> Rule 60(b)(3) authorizes the court to grant a motion to relieve a party from a final judgment, order, or proceeding because of fraud, misrepresentation, or misconduct by an opposing party. For example, misconduct for which relief may be granted under this provision includes witness tampering, which consists of threatening a witness or attempting to dissuade a witness from testifying.
>
> Under Rule 60(b)(3), both intentional and unintentional misrepresentations and failures to disclose are a sufficient basis for relief. . .
>
> Courts determining Rule 60(b)(3) motions always require proof that the alleged fraud or other misconduct prevented the moving party from fully and fairly presenting his or her case at trial.

12 MOORE'S FEDERAL PRACTICE - CIVIL § 60.43[1][a] & [c].

The Ninth Circuit Court of Appeals has addressed the application of the law on vacating an

8

order based on Federal Rule of Civil Procedure 60(b)(3) in the Ninth Circuit as follows:

> Rule 60(b)(3) permits a losing party to move for relief from judgment on the basis of "fraud, ... misrepresentation, or other misconduct of an adverse party." FED. R. CIV. P. 60(b)(3). To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense. *See Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir.1986); *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878–79 (9th Cir.1990). Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir.1987).

*De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

The party seeking relief pursuant to Federal Rule of Civil Procedure 60(b)(3), "has the burden of proving fraud or misrepresentation by clear and convincing evidence." *Id*.; § 60.43[4][a]. *See also*, *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1132 (9th Cir. 2022), "Initially, it bears emphasizing that a party seeking to establish fraud on the court must meet a high standard."

### DISCUSSION AND RULING

The non-disputed facts in this contested matter are that Landlord was on notice of the bankruptcy on July 8, 2024, by virtue of Debtor sending Ms. Gross an email with the Notice of Bankruptcy attached. *See* Ex. A, Docket 227. The email exchange between Debtor and Ms. Gross on July 8, 2024 includes the following:

**Debtor**:

Good afternoon Trina,

I had an emergency situation take place over the last 2 weeks and I lost my car in the process. Because of this, I had to file for bankruptcy today. I have attached the court document to this email. I will update you once I have more information from the court trustee.

(The Notice of Bankruptcy was attached to this email dated July 8, 2024 as a downloadable JPG image).

**Ms. Gross**:

Hello Vanessa,

Unfortunately, this does not exclude you from being evicted if we don't receive rent by the time the three day pay or quit notice expire. If we don't receive rent payment by July 11 your file will be sent to the attorneys, and they will begin the eviction process. After the eviction process begins, we will not longer be able to accept rent from you. You will be served and evicted. I want to be clear and upfront with you

9

   so you understand the legal process.

   (This email is dated July 8, 2024)

Ex. B, Docket 147. As evident from this exchange, Debtor's bankruptcy was acknowledged and then ignored, and Ms. Gross persisted to demand collection and threaten eviction in violation of the automatic stay.

   On November 4, 2024, Landlord then moved for relief from the stay, including retroactive relief to July 8, 2024, testifying that it had no knowledge of the bankruptcy case when it took actions that would have been in violation of the automatic stay. Mot. For Relief 2:16-20, Docket 76. Landlord asserted in its Motion for Relief that it only learned of the bankruptcy for the first time on October 15, 2024, from Debtor's Answer to the unlawful detainer. *Id.* Debtor's bankruptcy counsel appeared at the hearing on the Motion for Relief held on December 5, 2024 and did not raise a defense to the Motion, including the retroactive relief.

   It is worth noting that Landlord filed its Motion for Relief on November 4, 2024 and noticed the Motion pursuant to Local Bankruptcy Rule 9014-1(f)(2), setting the hearing for December 5, 2024. Notice, Docket 77. Debtor was not required to file written opposition and had more than enough time to mount a defense, including one of misrepresentations made to the court. Again, Debtor's bankruptcy counsel appeared at the hearing on the Motion for Relief held on December 5, 2024 and did not raise any defense to the Motion or request to file opposition pleadings.

   Landlord has submitted the Declarations of Ms. Gross and Ms. Cuen who testify they now remember the email exchange from July 8, 2024, including the Notice of Bankruptcy; however, they also testify that when they provided their Declarations in support of the Motion for Relief, they had forgotten the July 8, 2024 email exchange. *See* Decl. ¶ 8, Docket 221; Decl. ¶ 10, Docket 219. Ms. Gross and Ms. Cuen also testify that neither had received a notice from the Bankruptcy Court of a case actually having been filed, and could not recall a case where a tenant said they filed bankruptcy and a notice was not received from the Court. Dec., ¶¶ 11, 12; Dckt. 219, and Dec. ¶¶ 10, 11; Dckt. 221. Ms. Gross and Ms. Cuen further testify, in their "legal opinions," that they do not believe that rent stops accruing post-petition if a debtor chooses to continue to reside in the premises. *Id.*; Decs., ¶ 12 and ¶ 11, respectively.

1    With respect to Landlord's policy concerning notice of bankruptcy relating to a tenant,
2    Ms. Gross and Ms. Cuen both testify:

> Prime Administration's policy is that, when a Notice of Chapter 7 Bankruptcy Case (Form 309A) is received, the notice is placed in the tenant's file. If the file is sent to collection, the notice goes with it to inform outside counsel of the bankruptcy case. I never received such a notice, and no such notice appears in the Debtor's file.

*Id.*; Decs., ¶¶ 11 and 10, respectively.

The court finds this testimony is no excuse for apparently failing to document the bankruptcy case as it is incumbent upon Landlord to train their employees how to handle bankruptcy protocol. That responsibility does not fall on tenants. However, such does not provide sufficient grounds to vacate the prior order (though it may show grounds for sanctions for violation of the automatic stay, having occurred earlier than the period for which retroactive relief from the Stay was granted).

**Sufficient Grounds to Vacate Prior Order Not Shown**

It is an accepted fact for purposes of this Contested Matter that Landlord requesting relief from stay retroactively was based on a misrepresentation to the court. The evidence shows Landlord was or should have been aware of the bankruptcy case from the email exchange between Debtor and Ms. Gross on July 8, 2024. The question becomes whether this misrepresentation prevented Debtor from fully and fairly presenting the defense.

Landlord argues that the misrepresentation did not prevent Debtor from asserting the defense. She knew that Landlord had made the misrepresentation at the hearing held on December 5, 2024, but she did not assert the defense. Debtor's experienced bankruptcy counsel appeared at that hearing and did not assert any defense or request for the court to set a briefing schedule based upon an asserted defense. Thus, Landlord asserts there was nothing about the misrepresentation that prevented Debtor or her counsel from making the defense.

<u>Debtor's Asserted Disability</u>

Debtor argues that the misrepresentation caused a medical psychiatric emergency that prevented her from making the defense. Debtor states in her Reply Brief:

> This is not a case where the Debtor simply failed to respond. Rather, the opposing

11

1 party submitted materially false declarations and engaged in conduct that directly triggered a severe psychiatric relapse. From Prime's first receipt of the bankruptcy notice to the July 11, 2024 email thread initiated by Ms. Cuen — falsely claiming no knowledge of the case — Debtor's condition worsened as she struggled to comprehend how such blatant falsehoods were allowed to stand. Prime may not have known of the Debtor's psychiatric condition, but Rule 60(b)(3) does not require such knowledge. Relief is warranted when a party's misrepresentations, whether reckless or deliberate, deprived a litigant of the opportunity to fully and fairly present their case.

Reply Brief at 6. Debtor's Declaration filed in support does not provide the court with sufficient factual testimony for the court to make such a factual or legal conclusion. The Debtor has not submitted Exhibits in support from a doctor describing her condition or testimony of third-parties with personal knowledge attesting to such alleged disabilities.

As noted above, while the Debtor cites to the staff she was communicating with not documenting that the Debtor filed bankruptcy, the Debtor herself left Landlord, her landlord, off of the Master Address List, ensuring that it would not receive notification of her Bankruptcy Case having been filed.

The Debtor has filed several other recent cases that have been dismissed. On May 30, 2023, Debtor commenced a Chapter 13 Case in which she was represented by counsel. 23-21749, the "Second Case." The Second Case was dismissed on September 27, 2023. On Schedule G, Debtor listed a residential lease with Harvest at Fiddyment Ranch. 23-21749; Dckt. 1 at 38. Harvest at Fiddyment Ranch is listed on the Verification of Master Address List filed by Debtor in the Second Bankruptcy Case. *Id*.; Dckt. 3.

Debtor's first Chapter 13 Case, 23-20846, was filed on March 20, 2023, by the Debtor in *pro se* (the "First Case"). The First Chapter 13 Case was dismissed on May 17, 2023. On Schedule G in the First Case, the Debtor lists there being no leases. 23-20846; Dckt. 1 at 40. Harvest at Fiddyment Ranch Apartments is listed on Schedule E/F as having an unsecured claim for past due rent, with that Claim marked as disputed by the Debtor. *Id*. at 35. Harvest at Fiddyment Ranch Apartments is listed on the Verification of Master Address List filed by the Debtor in the Second Case. *Id*.; Dckt. 3 at 3.

In the Current Bankruptcy Case, 24-22967, filed on July 8, 2024, which the Debtor commenced as a Chapter 13 in *pro se*, the Debtor lists there being a Residential Lease with Harvest

12

1 at Fiddyment Ranch. Dckt. 1 at 40. The Schedule G filed in the Current Bankruptcy Case has the same information as the Schedule G filed in the First Bankruptcy Case.

On Schedule E/F in the Current Bankruptcy Case, the Debtor lists both the Harvest at Fiddyment Ranch Apartments and The Legends at Willow Creek as having claims for rent. Dckt. 1 at 34-35. While including Harvest at Fiddyment Ranch Apartments on the Verification of Master Address List filed in the Current Bankruptcy Case, Landlord is not included on the address list. Dckt. 3.

At the end of the day, from the evidence presented, the misrepresentations asserted by Debtor did not prevent Debtor from opposing the Motion for Relief From the Stay. The misrepresentation is asserted to be that Landlord was not aware of the Debtor having filed the Current Bankruptcy Case. Debtor knew she had told Landlord's representatives of the Bankruptcy Case being filed and had her email correspondence back and forth.

While Debtor asserts that she was suffering a psychiatric breakdown due to the misrepresentation, the evidence submitted by Debtor is to the contrary. In support of her Reply filed on June 10, 2025 (Dckt. 225), Debtor has provided copies of email communications as Exhibit 1C (Dckt. 227).

Exhibit 1C is a series of emails that begin in March 9, 2024, and relate to defaults in rent payments by Debtor. These include:

    A.    A June 25, 2024 Email from Debtor to Legends at Willow Creek requesting that her resident portal be unblocked so Debtor can pay the July 2024 rent early. Dckt. 227 at 24. An email from Trina Gross responds, stating that the resident portal has been unblocked, it have been previously blocked due an NFS payment having been made through it. *Id*.

    B.    An August 5, 2024 email from Debtor to Trina Gross at Prime requests W-9 documentation and ledger for Sacramento County so the County can make the next rent payment. *Id*. at 29. Trina Gross responds on August 5, 2025, providing a copy of the ledger and stating that the W-9 will be sent directly to the County. *Id*. These emails continue through August 9, 2024, with the August 9, 2025 email from Debtor stating that she is picking up the rent check and will drop it off. *Id*. at 32.

    C.    Debtor sent an email on November 19, 2024, requesting a refund of the rent for July and August, since "those monies were included in my bankruptcy and are being discharged." *Id*. at 33. Tina Gross responds, inquiring whether the Debtor is still in the apartment of has moved out. *Id*.

///

      Debtor responded on November 19, 2024, stating that she is moving out, and just waiting for "my discharge paperwork." *Id*. at 34.

From these emails, it appears that Debtor was functioning well in November 2024, and some time prior thereto, and was actively in the process of vacating the premises, which would be obviating the need for an unlawful detainer proceeding. Debtor was also advancing legal arguments in November 2024 about recovering post-petition rent payments.

The court concludes that while Landlord made a misrepresentation to the court, the misrepresentation did not prevent Debtor from asserting a defense to the Motion for Relief. The court makes this conclusion based on the facts that the Debtor knew of the misrepresentations by the December 5, 2024 hearing date, but Debtor's counsel appeared at the hearing and did not offer the defense. The misrepresentation did not prevent Debtor's counsel from making the defense, even granting Debtor experienced a psychiatric breakdown.

The court concludes that sufficient grounds, by clear and convincing evidence (or even a preponderance of the evidence), have not been shown by Debtor to vacate this court's Original Order, Dckt. 100, and Amended Order, Dckt. 245, which was issued to correct a clerical error. The court has considered the Amended Motion to Vacate being made to both the Amended Order as well as the Original Order.

The court shall enter an order Denying the Amended Motion to Vacate, and Dismissing Without Prejudice the Motion for Sanctions.

**Dated:** August 19, 2025

**By the Court**

/s/ Ronald H. Sargis
Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor(s)** | **Attorney(s) for the Debtor(s)** (if any) |
|---|---|
|  |  |
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for the Trustee** (if any) | Julie H. Rome-Banks, Esq.<br>Reno Fernandez, Esq.<br>2775 Park Avenue<br>Santa Clara, CA 95050 |